BRYAN, Judge,
concurring in part and dissenting in part.
I concur with the main opinion insofar as it concludes that the juvenile court did not have subject-matter jurisdiction to consider the father’s petition to modify his child-support obligation. 84 So.3d at 957-58 (citing Ex parte T.C., 63 So.3d 627, 631 (Ala.Civ.App.2010)). Cf. Ex parte C.E., [Ms. 1090624, July 29, 2011] _ So.3d _, _ (Ala.2011) (wherein our supreme court approved this court’s interpretation of § 12-15-117(a), Ala.Code *964 1975, and, thus, our holding in Ex parte T.C., supra).
However, I dissent from the main opinion’s conclusion that the juvenile court retained jurisdiction to consider the contempt petitions filed by the mother and the father in the juvenile court. I recognize that § 12-15-110(a), Ala.Code 1975, grants the juvenile court power to punish a person “for disobeying an order of the juvenile court.” I also recognize the well-settled law that grants a trial court the power to enforce its own judgments. See Hall v. Hall, 485 So.2d 747, 749 (Ala.Civ.App.1986) (“It has long been recognized that a court has the inherent power to issue such orders or process as is necessary to enforce its judgment.”). Most importantly, I recognize that my duty as a judge is to interpret the law as enacted by our legislature and not to “‘amend statutes under the guise of construction.’ ” 84 So.3d at 959 (quoting Honeycutt v. Employees’ Ret. Sys. of Alabama, 431 So.2d 961, 964 (Ala.1983)). However, after considering the practical implications of the decision reached by the main opinion, my decision to dissent from the conclusion reached by the main opinion regarding the juvenile court’s jurisdiction to enforce a judgment when it has lost continuing jurisdiction to modify the same judgment, is based on the “well-established principle of statutory construction that the law favors rational and sensible construction” of a statute. Weathers v. City of Oxford, 895 So.2d 305, 309 (Ala.Civ.App.2004).
The main opinion’s conclusion today puts a stamp of approval on an unreasonable interpretation of the Alabama Juvenile Justice Act, § 12-15-101 et seq., Ala.Code 1975 (“the AJJA”). According to the main opinion, if a juvenile court acquired jurisdiction over a case through a paternity action, and a judgment addressing child support and custody was entered pursuant to that determination of paternity, in the future, if either party wanted to modify the child-support or custody provisions of the judgment and file a petition seeking to hold the other party in contempt, the contempt action would have to be filed in and decided by the juvenile court but the modification action would have to be filed in and decided by the circuit court. This conclusion is unreasonable because it requires the parties to file two separate actions, in two separate courts, when the same set of facts will be presented in both cases. For example, in the present case, the father’s alleged inability to pay his child-support obligation was the basis of his petition to modify his child-support obligation as well as the basis of his defense against the mother’s petition to hold the father in contempt for failing to pay the full amount of his child-support obligation. Now, according to the main opinion, the father will have to present the facts to establish his inability to pay his child-support obligation in two separate actions in two separate courts.
Furthermore, the main opinion’s conclusion that the juvenile court retains jurisdiction over enforcement actions but not modification actions will, almost certainly, result in inconsistent judgments. Using the present case again as an example, if the circuit court, after considering the father’s petition to modify his child-support obligation, concluded that there had been a material change in circumstances since the entry of the April 2007 judgment, i.e., if it found that the father was not voluntarily underemployed, the circuit court would enter a judgment granting the father’s petition to modify his child-support obligation. Because the circuit court could make such a modification retroactive to the date the father filed his petition, see Rule 32(A)(3)(a), Ala. R. Jud. Admin., the circuit court could, depending on the father’s new child-support obligation, determine that the father did not owe a child-support arrearage. However, in contrast, the juve *965 nile court, after considering the mother’s contempt petition, could determine that the father was voluntarily underemployed and that he had the ability to pay the full amount of child support ordered in the April 2007 judgment. Thus, the juvenile court could find that the father was in contempt, and it could order the father to pay a child-support arrearage, which would be inconsistent with the judgment of the circuit court.
Finally, the main opinion’s conclusion thwarts the clear intent of the legislature in enacting the AJJA, which was “to provide that the juvenile courts of this state should no longer be deciding custody disputes except insofar as their resolution is directly incidental to core juvenile-court jurisdiction....” Ex parte T.C., 63 So.3d at 630-31. Stated differently, this court has determined that the changes in the AJJA related to a juvenile court’s continuing jurisdiction were intended to prevent the juvenile court from becoming overburdened with matters that are not directly incidental to the juvenile court’s exercise of its core jurisdiction, such as actions to establish paternity, see § 12 — 15—115(a)(6), Ala.Code 1975, actions wherein a child is alleged to be dependent, see § 12-15-117(a), and other matters specifically set forth in §§ 12-15-114 and -115, Ala.Code 1975. The main opinion’s conclusion nullifies the legislature’s intent by allowing cases that are modifiable only by the circuit court to leave one foot in juvenile court solely for the purpose of enforcement. It is well settled that “the Legislature will not be presumed to have done a futile thing in enacting a statute; there is a presumption that the Legislature intended a just and reasonable construction and did not enact a statute that has no practical meaning.” Weathers v. City of Oxford, 895 So.2d at 309.
To the extent that the main opinion relies on the catch-all phrase “other money ordered by the juvenile court” in § 12-15-117(c), Ala.Code 1975, to confer continuing jurisdiction to a juvenile court to enforce a child-support judgment made in conjunction with a paternity judgment, I respectfully disagree. Fines, court costs, and restitution — the specific types of money judgments referred to in § 12-15-117(c)— are definite, specific, and unmodifiable money judgments, unlike a child-support judgment. Thus, based on the ejusdem generis rule of statutory construction, I must conclude that child-support judgments are not included in the phrase “other money ordered by the juvenile court” because child-support judgments are of a different nature or class of “money ordered by the juvenile court” than fines, court costs, and restitution. See Cocking v. City of Montgomery, 48 So.3d 647, 650 (Ala.Civ.App.2010) (“The ejusdem generis rule of statutory construction provides that when general words or phrases follow or precede a specific list of classes of persons or things, the general word or phrase is interpreted to be of the same nature or class as those named in the specific list.”).
Because this court has a duty to address a trial court’s lack of subject-matter jurisdiction ex mero motu, see Ex parte T.C., 63 So.3d at 630 (citing Ex parte Progressive Specialty Ins. Co., 31 So.3d 661, 662 n. 1 (Ala.2009)), I would conclude that the father’s appeal is due to be dismissed in its entirety. Because a majority of this court disagrees, I respectfully dissent.
This special writing should not be interpreted as my approval of the current state of the AJJA. To the contrary, I believe that the juvenile court should retain jurisdiction to modify and enforce any judgment that it has entered after properly exercising original jurisdiction over the action. As noted in the main opinion, this *966 court has been informed that changes to the AJJA are forthcoming. However, until that time, we are left to interpret the AJJA as it exists at this time. Because the AJJA divested the juvenile courts of jurisdiction to modify judgments that did not find a child dependent, delinquent, or in need of supervision, I must conclude, based on the foregoing reasons, that the juvenile court also lost jurisdiction to enforce any judgment that it no longer had jurisdiction to modify. Hopefully, the legislature will correct this area of law so that there is no question that a juvenile court retains jurisdiction to modify and enforce its judgments.